## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| **CHRISTINA L. KEEBLER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 4:19-CV-00831-NCC** |
| ) | |
| **ANDREW M. SAUL,** ) | |
| **Commissioner of Social Security** ) | |
| ) | |
| **Defendant.** ) | |

### MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the applications of Christina L. Keebler ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and 42 U.S.C. §§ 1381, *et seq.*  Plaintiff has filed a brief in support of the Complaint (Doc. 18) and Defendant has filed a brief in support of the Answer (Doc. 21).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 8).

### I. PROCEDURAL HISTORY

Plaintiff filed her applications for DIB and SSI on January 12, 2017, and January 26, 2017, respectively (Tr. 151-55, 161-66).  Plaintiff was initially denied on March 16, 2017, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") on March 22, 2017 (Tr. 51-74, 85-86).  After a hearing, by decision dated October 26, 2018, the ALJ found Plaintiff not disabled (Tr. 7-23).  On March 1, 2019, the Appeals Council denied Plaintiff's request for review (Tr. 1-6).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2018, and that Plaintiff has not engaged in substantial gainful activity since September 12, 2016, the alleged onset date (Tr. 12).  The ALJ found Plaintiff has the severe impairments of degenerative disc disease of the cervical spine and bilateral carpal tunnel syndrome status post carpal tunnel release surgery on the right upper extremity, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13-14).  After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations (Tr. 14).  Plaintiff can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently (*Id.*).  Plaintiff can sit for 6 hours and stand/walk for 6 hours in an 8-hour work day (*Id.*).  Plaintiff can never climb ladders, ropes, or scaffolds, or crawl (*Id.*).  Plaintiff cannot tolerate exposure to unprotected heights or hazardous machinery (*Id.*).  Plaintiff can occasionally reach overhead with the bilateral upper extremities (*Id.*).  Plaintiff can frequently reach in all other directions with the bilateral upper extremities (*Id.*).  Plaintiff can frequently handle bilaterally (*Id.*).  Plaintiff can frequently finger with the right hand (*Id.*).  Plaintiff cannot tolerate concentrated exposure to extreme temperatures (*Id.*).  The ALJ found Plaintiff capable of performing her past relevant work as a customer service representative, loan clerk, and mailroom clerk (Tr. 18).  Thus, the ALJ concluded that Plaintiff has not been under a disability from September 12, 2016, through the date of the decision (*Id.*).  Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id.*  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ

will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant."  *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).  *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  *Id.*  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-

finder.  *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004).  Thus, an administrative

decision which is supported by substantial evidence is not subject to reversal merely because

substantial evidence may also support an opposite conclusion or because the reviewing court

would have decided differently.  *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises three issues.  First, Plaintiff

asserts that the ALJ failed to consider a closed period of disability (Doc. 18 at 3-11).  Second,

Plaintiff argues the ALJ applied an improper legal standard and based her decision only on the

objective medical evidence (*Id.* at 11-13).  Third, Plaintiff asserts the ALJ failed to properly

evaluate Plaintiff's RFC (*Id.* at 13-15).  For the following reasons, the Court finds that Plaintiff's

arguments are without merit, and that the ALJ's decision is based on substantial evidence and is

consistent with the Regulations and case law.

### A. RFC Determination

First, the Court will address Plaintiff's arguments regarding the ALJ's RFC determination

as this analysis necessarily impacts the issue regarding a closed period of disability.  Plaintiff

argues both that the ALJ applied an improper legal standard when determining Plaintiff's RFC

and that the ALJ failed to properly evaluate the RFC (Doc. 18 at 11-15).

RFC is the most a claimant can still do in a work setting despite that claimant's physical

or mental limitations.  *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20

C.F.R. § 416.945(a)(1).  An ALJ determines a claimant's RFC "based on all the relevant

evidence, including medical records, observations of treating physicians and others, and

[claimant's] own description of [his] limitations."  *Page*, 484 F.3d at 1043 (quoting *Anderson v.

Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).  Although the ALJ bears the primary responsibility

for assessing a claimant's residual functional capacity based on all relevant evidence, "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). *See also Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox*, 495 F.3d at 619). "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

The Court finds that the ALJ's RFC determination is based on substantial evidence. In relevant part, as contested by Plaintiff, the ALJ determined that Plaintiff has the RFC to perform a reduced range of light work, including occasionally reaching overhead with the bilateral upper extremities, frequently reaching in all other directions with the bilateral upper extremities, frequently handling bilaterally and frequently fingering with the right hand (Tr. 14). As a preliminary matter, the Court finds unavailing Plaintiff's assertion that the ALJ applied the wrong standard and failed to consider evidence other than objective evidence when she determined Plaintiff's RFC. As addressed in more detail here, in addition to the medical evidence, the ALJ considered and conducted analyses of: Plaintiff's subjective complaints, Plaintiff's activities of daily living, and the medical opinion evidence of record. The Court will address each in turn.

First, the Court finds that the ALJ properly evaluated Plaintiff's subjective complaints.[1] *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that

---

[1] Social Security Ruling ("SSR") 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on

the ALJ's determination regarding her RFC was influenced by his determination that her

allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)).  In

assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2)

the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4)

the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the

claimant's work history; and (7) the absence of objective medical evidence to support the

claimant's complaints.  *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*,

739 F.2d 1320, 1322 (8th Cir. 1984).  "The credibility of a claimant's subjective testimony is

primarily for the ALJ to decide, not the courts."  *Pearsall v. Massanari*, 274 F.3d 1211, 1218

(8th Cir. 2001).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason

for doing so, [a court] will normally defer to the ALJ's credibility determination."  *Gregg v.

Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).  *See also Halverson v. Astrue*, 600 F.3d 922, 932

(8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting

effects of [her] symptoms are not entirely consistent with the medical evidence and other

evidence in the record" (Tr. 15).  The ALJ specifically noted that the symptoms "are inconsistent

because the objective medical evidence does not support the continued severity of the alleged

limitations" and then continued to detail the medical evidence of record for nearly three full

pages (Tr. 15-17).  An ALJ may determine that subjective complaints are not credible in light of

objective medical evidence to the contrary.  *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir.

2006).  Indeed, the record indicates that on September 11, 2016, just one day prior to the alleged

onset date, Plaintiff exhibited normal range of motion including with respect to her shoulders,

---

evaluating symptoms are unchanged."  SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R.
§§ 404.1529, 416.929.

elbows, wrists, and digits and an x-ray of the shoulder was negative (Tr. 15, 296, 298).  One week later Plaintiff presented with normal range of motion in her neck, full range of motion in all planes of both shoulders, with no impingement or instability, and intact sensation and symmetrical deep-tendon reflexes in her upper extremities (Tr. 15, 312).  Plaintiff was subsequently diagnosed with a herniated nucleus pulposus at C6-7 and, on December 14, 2016, after a delay apparently primarily resulting from an argument with her orthopedist regarding her narcotic medication as well as Plaintiff's refusal to quit smoking, Plaintiff underwent anterior cervical discectomy with fusion at C5-6 through C6-7 (Tr. 15-16, 317, 416-18).  Following her surgery, Plaintiff wore a neck brace (Tr. 16, 335).  Approximately a month later, Plaintiff reported that she had no numbness or pain in either arm, and she was no longer required to sleep with a neck brace or use the neck brace in the house (Tr. 16, 412).  In fact, Plaintiff testified that "everything was great" until she suffered a new injury, "a coughing nausea fit" (Tr. 34, 37).

Plaintiff asserts that the ALJ mistakenly found a solid fusion as of August 10, 2017 (Doc. 18 at 15).  A CT report from August 4, 2017, revealed a solid fusion with some loosening of the C5 vertical body screws (Tr. 16, 553).  On August 10, 2017, however, Dr. Graven noted, "CT report reveals solid fusion.  My interpretation is somewhat different.  I believe that [Plaintiff] is on fused at C5-6 and C6-7.  There is only some loosening of the C5 vertebral body screws.  A bone growth stimulator is ordered for her apparent pseudoarthrosis [2]" (Tr. 16, 618).  Of note, during this visit Plaintiff reported that she hosed off the hot tub two days prior with increased pain (Tr. 16, 618).  On September 8, 2017, Plaintiff reported increased pain in the middle upper neck, increased headaches, numbness and tingling in both arms and radiating pain in both arms

---

[2] Pseudoarthrosis, also known as a false joint, refers to a failure of fusion after an index procedure, such as Plaintiff's, intended to obtain spinal arthrodesis.  Stedman's Medical Dictionary, 732890 & 733150 (2014).

(Tr. 627).  Dr. Graven nevertheless noted that x-rays reveal that "the fusion appears to be getting more solid" and "the slight backing out of the most cephalad screw has not changed since 1 month ago" (*Id.*).  On October 6, 2017, upon review of x-rays, Dr. Graven found "increased evidence of fusion" (Tr. 16-17, 637).  By January 2018, Plaintiff reported that she was doing well and had no numbness in her fingers (Tr. 17, 658).  She also indicated that she had been making jewelry but had difficulty cutting food and opening lids (Tr. 17, 658).  In February 2018, Plaintiff was advised to wean off the pain medications and Neurontin (Tr. 17, 669).  However, on May 24, 2018, Dr. Graven could not confirm a solid fusion and he ordered an epidural injection to treat continued neck pain (Tr. 17, 679).  Dr. Graven further indicated that "[t]here has been no change in the back out of the cephalad screws" and "kyphotic deformity due to graft subsidence" (Tr. 679).[3]  While these most recent records are concerning, the record otherwise consistently shows positive progression in Plaintiff's healing from her back surgery absent a period of reinjury.  Therefore, the ALJ properly found that Plaintiff's subjective complaints were inconsistent with the objective medical evidence.

Although the ALJ did not specifically address Plaintiff's noncompliance with treatment recommendations as it relates to her analysis of Plaintiff's subjective complaints, it is clear from the opinion that the ALJ found Plaintiff's failure to follow a prescribed course of treatment inconsistent with her allegations of disability (Tr. 15-17).  Specifically, as noted by the ALJ, Plaintiff was repeatedly counseled to quit smoking but failed to do so (Tr. 317, 322, 323, 668).  Her noncompliance is especially relevant here in light of its impact on her back surgery.  Specifically, her orthopedist conditioned her disc replacement surgery on three weeks of no

---

[3] "Kyphosis is an exaggerated, forward rounding of the back."  Mayo Clinic, *Kyphosis*, https://www.mayoclinic.org/diseases-conditions/kyphosis/symptoms-causes/syc-20374205 (last visited Mar. 30, 2020).

smoking and a commitment not to smoke for three months after the surgery "to allow end growth of the prosthesis" (Tr. 317). "Failure to follow [a] recommended course of treatment weighs against a claimant's credibility." An ALJ may consider a claimant's failure to stop smoking in making her credibility determination. *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008). *See also Wildman*, 596 F.3d at 968-69 (it is permissible for ALJ to consider claimant's non-compliance with prescribed medical treatment); *Julin* 826 F.3d at 1087 ("Contradictory statements that [the plaintiff] made to treating physicians are yet another reason to discount [his] credibility").

The ALJ also found Plaintiff's testimony regarding her limitations to be otherwise inconsistent (Tr. 17). For example, in addition to the activities of daily living addressed in detail below, the record shows that Plaintiff was able to hose off a hot tub during the period she claims to have been disabled (Tr. 17, 618). *See also* Tr. 40 (sweeping the deck off), 42 (not driving because she does not have a car, not because she is unable). Further, during an October 6, 2016 visit with her primary care physician, Plaintiff sought the competition of FMLA paperwork so that she could take leave from work contrary to her testimony that she was let go (Tr. 33, 336, 338). The primary care physician noted that the orthopedic surgeon refused to complete her FMLA paperwork (Tr. 336). An ALJ may properly consider such inconsistences when evaluating a plaintiff's subjective complaints. *See Julin v. Colvin*, 826 F.3d 1082, 1087-88 (8th Cir. 2016) (discussing evidence in the record "from which the ALJ could infer [the plaintiff's] claims were overstated or not entirely reliable"). Thus, the Court finds that the ALJ's evaluation of Plaintiff's subjective complaints to be based on substantial evidence and consistent with Regulations and case law.

Second, the ALJ considered Plaintiff's activities of daily living, finding them not to be as limited as one would expect of a disabled individual (Tr. 17). Specifically, the ALJ found Plaintiff's testimony that she could not perform household chores or lift more than 5 pounds to be inconsistent with the treatment records showing that she was performing household chores and activities (Tr. 17). As noted by the ALJ, the treatment records indicated that Plaintiff was sweeping, mopping, and hosing off the hot tub (Tr. 17, 40, 618). The ALJ also highlighted Plaintiff's report that she was making bead jewelry, "an activity that would involve fine motor control with the fingers and hands" (Tr. 17, 43). Indeed, a complete review of the record supports the ALJ's assessment. For example, in her undated Function Report, Plaintiff indicated that she helped care for her 10-year-old son; spent about an hour every other day on housework; shopped in stores; and had no problem handling her own personal care (Tr. 14, 208-10). Plaintiff also testified that she helped take care of her pet dog, helped with laundry, and did some sweeping (Tr 15, 17, 40, 42, 44). *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility.").

Third, the ALJ considered the medical-opinion evidence of record (Tr. 17). Specifically, the ALJ afforded the opinion of Dr. Garland Tschudin, M.D. ("Dr. Tschudin"), a state agency physician, "some weight" (Tr. 17, 57-58). Dr. Tschudin reviewed Plaintiff's file and opined that she could perform light work with some postural limitations (Tr. 57-58). Specifically, Dr. Tschudin found Plaintiff limited to occasional lifting and/or carrying of 20 pounds, frequent lifting and/or carrying of 10 pounds, standing and/or walking for a total of about 6 hours in an 8-hour workday, sitting for a total of about 6 hours in an 8-hour workday, occasional climbing ladders/ropes/scaffolds, crouching, and crawling (*Id.*). The ALJ recognized that newer evidence

supported more postural, environmental, and manipulative limitations, all of which were incorporated into the ALJ's RFC determination (Tr. 14, 17).

In conclusion, the Court finds that the ALJ's RFC determination is consistent with the relevant evidence of record including the objective medical evidence, the observations of medical providers, and diagnostic test results, as well as the medical opinion evidence of record and the evaluation of Plaintiff's subjective complaints.

**B. Closed Period of Disability**

Next, Plaintiff asserts that the ALJ failed to consider a closed period of disability (Doc. 18 at 3-11).  Specifically, Plaintiff argues that she meets the definition for a closed period of disability from September 11, 2016, when Plaintiff presented to the emergency room reporting left shoulder pain, through at least October 6, 2017, when Dr. Graven confirmed that the fusion of the cervical spine appeared to be becoming more solid (Doc. 18 at 4 (citing Tr. 294, 553)). Plaintiff asserts that the ALJ failed to account for Plaintiff's pain and limitation of motion during this period (*Id.*).

The Commissioner may award Social Security disability benefits either on a continuing basis or, where a once-disabling condition later ceases to be disabling, for a "closed period." *Harris v. Sec'y of Dep't of Health & Human Servs.*, 959 F.2d 723, 724 (8th Cir. 1992).  *See also Quaite v. Barnhart*, 312 F. Supp. 2d 1195, 1200-01 (E.D. Mo. 2004) (affirming the ALJ's decision to award disability benefits for a closed period ending on a specific date where there was substantial evidence to support the ALJ's conclusion that Plaintiff had ceased being disabled as of that date).  To qualify for a closed period of disability, the disabling condition must last for at least twelve months.  42 U.S.C. § 423(d)(A); *Karlix v. Barnhart*, 457 F.3d 742, 747 (8th Cir. 2006) (rejecting a claimant's argument that the ALJ failed to consider whether he was entitled to

a closed period of disability based on an impairment that lasted for about ten months).

"However, even within a closed period, a claimant must still meet the definition of disability[.]"

*Devary v. Colvin*, 5 F. Supp.3d 1023, 1032 (N.D. Iowa 2014).

The record shows that Plaintiff did not meet the definition of disability for any 12-month period during the relevant period and was thus not eligible for consideration of a closed period of disability. Although Plaintiff reported pain in her shoulder and neck several times in September 2016 and was subsequently diagnosed with a herniated nucleus pulposus at C6-7, she did not have any range of motion limitations in September 2016 and did not have surgery until December 14, 2016, in part because of a dispute with her first orthopedist over her pain medication and also because she refused to quit smoking. Following her surgery, Plaintiff was admittedly doing very well until a subsequent reinjury of the back after a coughing fit. Even if the Court were to find that the August 4, 2017 CT was not sufficient evidence of a solid fusion, as suggested by Plaintiff, the record clearly demonstrates fusion by October 2017. In the interim, Plaintiff reported fairly significant activities of daily living including hosing off the hot tub. No doubt Plaintiff was significantly limited for a period of time from late 2016 to summer, potentially the fall, of 2017, however such evidence does not meet the durational requirement for a closed period of disability.

In sum, after reviewing the parties' briefs, Plaintiff's testimony, and the medical records, the Court finds no evidence to suggest that Plaintiff's neck pain and associated limitation in her range of motion established disability for at least twelve months during the period of September 2016 through October 2017 and then ceased to be disabling, such as would have suggested entitlement to a closed period of disability. Thus, the Court finds that the lack of a specific discussion of a closed period of disability in the ALJ's decision does not warrant remand.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**, with prejudice.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 28th day of September, 2020.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE